# STATE OF MICHIGAN

# COURT OF APPEALS

COLOMA EMERGENCY AMBULANCE, INC.,
BRIAN BALOW, TRAUMASOFT, LLC, and
LB2, LLC,

UNPUBLISHED
April 21, 2016

Plaintiffs-Appellants,

v

No. 325616
Kalamazoo Circuit Court
LC No. 2014-000380-CK

TIMOTHY E. ONDERLINDE, EARS, INC., RED
ARROW PROPERTIES, LLC, and THE ESTATE
OF RONALD ONDERLINDE,

Defendants-Appellees.

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

In this contract enforcement action, plaintiffs, Coloma Emergency Ambulance, Inc. (Coloma), Brian Balow, Traumasoft, LLC, and LB2, LLC, appeal as of right an order denying their motion for summary disposition and granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

This case stems from the merger of two ambulance companies and the conflict that developed between the principals of the newly formed entity, Coloma. In an effort to resolve multiple filed and unfiled claims, the parties participated in voluntary mediation that resulted in counsel for all parties signing a document titled "Proposed Settlement," which referenced the future signing of additional documents. In July 2014, plaintiffs filed a complaint, alleging that the Proposed Settlement was a binding contract, and that defendants breached the contract by refusing to sign two follow-up documents drafted by plaintiffs: a Settlement Agreement and Release, and a Non-Compete, Non-Disparagement and Confidentiality Agreement. Plaintiffs and defendants each moved for summary disposition. The trial court denied plaintiffs' motion and granted defendants' motion under MCR 2.116(C)(10), concluding that the Proposed Settlement was not a binding contract.

Plaintiffs argue that the trial court erred by granting defendants' motion for summary disposition and concluding that the Proposed Settlement was not a valid and enforceable contract. A settlement agreement is a contract that is governed by the legal principles applicable to the interpretation and construction of contracts. *Walbridge Aldinger Co v Walcon Corp*, 207

-1-

Mich App 566, 571; 525 NW2d 489 (1994). This Court reviews de novo questions involving the existence and interpretation of a contract. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). When examining contractual language, this Court gives the words their plain and ordinary meaning and "may consult dictionary definitions to ascertain the plain and ordinary meaning of terms undefined in an agreement." *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527-528; 791 NW2d 724 (2010). "An unambiguous contractual provision reflects the parties['] intent as a matter of law, and 'if the language of the contract is unambiguous, we construe and enforce the contract as written.' " *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009), quoting *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). In addition, we review a trial court's decision to grant or deny summary disposition de novo. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002).

A valid contract requires the following elements: "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). Mutuality of agreement requires "a meeting of the minds on all the essential terms," which is judged objectively by looking at the visible acts and express words of the parties. *Kloian*, 273 Mich App at 453-454. "The party seeking to enforce a contract bears the burden of proving that the contract exists." *AFT Mich*, 497 Mich at 235. Mere discussions and negotiations cannot act as a substitute for the formal requirements of a contract. *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 549; 487 NW2d 499 (1992).

Parties can "make an enforceable contract binding them to prepare and execute a subsequent agreement" if "agreement is expressed on all essential terms." *Hansen v Catsman*, 371 Mich 79, 82; 123 NW2d 265 (1963). However, if "the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called 'contract to make a contract' is not a contract at all." *Id.* (citation and quotation marks omitted); see also *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 359; 320 NW2d 836 (1982) ("Like any other contract, a contract to make a contract can fail for indefiniteness if the trier of fact finds that it does not include an essential term to be incorporated into the final contract."). Evidence that the parties left certain matters for future negotiations suggests that the parties did not intend a document to be a binding contract. *Opdyke*, 413 Mich at 359-360. Likewise, the use of tentative language may also indicate that a document "contains mere expectations or intentions rather than contractual promises and undertakings." *Id.* at 360.

After reviewing the Proposed Settlement, we are persuaded that the parties did not intend the document to act as a binding contract. As a preliminary matter, the title identifies the document as a "proposed" settlement. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "propose" as "to form or put forward a plan or intention" or "to engage in talk or discussion," which suggests that the Proposed Settlement contained mere expectations or intentions, rather than contractual promises and undertakings. See *Opdyke*, 413 Mich at 360. The Proposed Settlement also states that the parties only agreed "in principle" to the listed terms, which would be "incorporated into final documentation." The language of the Proposed Settlement further indicates that plaintiffs would "draft and circulate for comments" the follow-up documents, which would be executed by the parties "when finalized." Taken collectively, the parties' use of tentative language and references to future negotiations supports the conclusion

that the Proposed Settlement was not a binding contract, but rather an outline of the parties' expectations or intentions regarding a future agreement. This conclusion is also supported by the fact that plaintiffs subsequently drafted a more detailed and formal "Settlement Agreement and Release," which referred to the Proposed Settlement "for informational purposes only." See *Hill v McGregor Mfg Corp*, 23 Mich App 342, 344-345; 178 NW2d 553 (1970) (concluding that a one-page "Memorandum of Understanding" that contemplated the signing of a longer "Settlement Agreement" was not a binding contract).

Further, although parties may enter an enforceable contract binding them to execute a subsequent agreement, no contract exists if the subsequent agreement contains essential terms that the parties did not previously agree on. *Hansen*, 371 Mich at 82. Enforcement is precluded if the parties leave open matters for future negotiations and there is no "method of determining the terms of the contract either by examining the agreement itself or by other usage or custom that is independent of a party's mere 'wish, will and desire.' " *State Bank of Standish v Curry*, 442 Mich 76, 89; 500 NW2d 104 (1993) (footnote omitted). In this case, the Proposed Settlement does not represent a meeting of the minds on all essential terms because the follow-up documents drafted by plaintiffs contained essential terms not included in the Proposed Settlement, including substantial terms defining competition under the non-compete agreement and terms providing that plaintiffs' releases and waivers would be considered void if defendants failed to perform. Under these circumstances, the trial court did not err by concluding that the Proposed Settlement did not constitute a binding and enforceable contract under Michigan law and properly granted defendants' motion for summary disposition.[1]

Affirmed.


/s/ Henry William Saad
/s/ Stephen L. Borrello
/s/ Michael F. Gadola

---

[1] Because we conclude that the Proposed Settlement is not an enforceable contract on the basis of a lack of mutuality of assent, we need not address the parties' arguments concerning how and against whom the purported contract could be enforced.